C. Joseph Salazar II v. TDCJ-ID, et al















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-295-CV

     C. JOSEPH SALAZAR II,
                                                                              Appellant
     v.

     TDCJ-ID, ET AL.,
                                                                              Appellees
 

From the 52nd District Court
Coryell County, Texas
Trial Court # 29,032
                                                                                                                

O P I N I O N
                                                                                                                

      Joseph Salazar, a prisoner in the Texas Department of Criminal Justice, sued the Department
and three of its employees after he was injured in an attack by another inmate. In a petition filed
on August 30, 1995, Salazar alleged the defendants’ negligence in failing to properly implement
certain security procedures proximately caused his injuries. The defendants moved to dismiss
Salazar’s claim for want of prosecution after he failed to appear at a June 5, 1998 pretrial dismissal
hearing. The court granted the defendants’ motion and dismissed the case on June 11. On July
13, Salazar filed a motion to reinstate alleging the lapse of activity in the case was due solely to
the court’s failure to rule on his discovery motions. The court dismissed Salazar’s motion as
untimely filed, and he brings this appeal.
      In a single point of error, Salazar asserts the trial court erred in dismissing his motion to
reinstate as untimely. He argues that Rule 4 of the Texas Rules of Civil Procedure extended his
filing deadline from July 11 to July 13 because July 11 fell on a Saturday. 
      Rule 165a(3) of the Texas Rules of Civil Procedure states that a motion to reinstate “shall be
filed with the clerk within 30 days after the order of dismissal is signed or within the period
provided by Rule 306a.” Tex. R. Civ. Pro. 165a(3) (Vernon 1998). We do not understand the
appellant to be invoking the delay-notice provision of Rule 306a. Rather, Salazar claims that
under Rule 4's time computation provision, his motion was timely filed because the 30-day
deadline was extended from Saturday until Monday.
      Rule 4 states:
In computing any period of time prescribed or allowed by these rules, by order of court,
or by any applicable statute, the day of the act, event, or default after which the
designated period of time begins to run is not to be included. The last day of the period
so computed is to be included, unless it is a Saturday, Sunday, or legal holiday, in which
event the period runs until the next day which is not a Saturday, Sunday or legal holiday.

Tex. R. Civ. P. 4 (Vernon 1998).
      The court signed the order of dismissal on June 11, and the thirtieth day after signing fell on
Saturday, July 11. The thirty day period therefore continued to run until Monday, July 13. The
court erred in dismissing Salazar’s July 13 motion as untimely. 
      We reverse the trial court’s dismissal of Salazar’s motion to reinstate and remand the cause
for a hearing on the motion.
                                                                   ROBERT M. CAMPBELL
                                                                   Justice (Sitting by Assignment)


Before Chief Justice Davis,
          Justice Vance, and
          Justice Campbell (Sitting by Assignment)
Reversed and remanded
Opinion delivered and filed October 13, 1999
Do not publish



ed. Wyatt, 23 S.W.3d at 27. The party proffering the expert
witness bears the burden of showing that the witness is qualified on the specific matter in question. 
Id.
DISCUSSION
The Evidentiary Objection
      During the guilt-innocence stage of trial, the State called Cabano to testify about his
administration of the HGN test. Defense counsel made the following objection:
[Prosecutor] Q: Could you briefly, could you tell the ladies and gentlemen what nystagmus
is and what it shows . . . .
 
[Defense counsel]: Your Honor, we object. This witness has not been qualified as an expert
on what nystagmus shows. He has passed a course that shows him how to administer a test
not what the test shows chemically or physically. We object to his, the question and ask that
he be restricted to answer of how he administered the test and what the indications were, not
what they mean.

      The trial court excused the jury. Defense counsel then took a voir dire examination of Cabano
to elaborate on the objection.
Q: Okay. Now, your education background in that [HGN] testing process is designed to
denote jerking or unlevel or unsolid pursuit of the eye in the following of the object; is that
correct?

      A: We just use involuntary jerking of the eye, sir.

. . .
 
Q: The involuntary jerking of the eye as pursued by the pen is something that the person
cannot control; is that correct?
 
A: Everybody, usually most people has a slight nystagmus, alcohol just enhances the
nystagmus.

      Q: But alcohol enhances the nystagmus is something you were told in school; is that right?

      A: I was instructed, yes, sir.

. . .
 
Q: You don’t know the relationship of alcohol to nystagmus directly do you, other than its
presence?

      A: Restate your question, sir.
 
Q: You don’t know the relationship of alcohol to the nystagmus, in other words, how much
alcohol it takes to make a person’s eyes jerk. You only know from your schooling that that
is an indicator; is that correct?
 
A: I know that if a person consumes alcoholic beverage whether it be one, two, or three, it
will enhance the nystagmus of the eyes.

      Q: But you can’t tell how intoxicated a person is by the HGN test; is that right?

      A: Yes, sir, I can.

      Q: And how, sir?
 
      A: Just by my training, sir. I’ve been doing it for 25 years, sir.

      Q: And so you can tell the difference between a .20 and a .08 or .06?

      A: Just through my training, sir, I say I can.

Defense counsel urged the court to sustain his objection that would prevent Cabano from
quantifying in precise numerical terms just how intoxicated Gullatt was. The court said: “This
officer has been qualified to give that test. [Therefore,] I’m going to overrule your objection.”
The Controlling Law From Emerson v. State
      In Emerson v. State, the Court of Criminal Appeals found that the HGN test is a reliable
indicator of intoxication:
After consulting the literature concerning alcohol and its effects on human eye
movement, and considering case law from other jurisdictions addressing the reliability
of the HGN test, we conclude that the theory underlying the HGN test is sufficiently
reliable pursuant to Texas Rule of Criminal Evidence 702. The scientific materials
addressing the issue have reached the uniform conclusion that the consumption of alcohol
has a cognizable effect on human eye movement. We believe that the accuracy of those
sources cannot be reasonably questioned.

. . .
 
We also conclude that the technique employed in the HGN test, as designed and
promoted by NHTSA, is reliable pursuant to Rule 702. . . . In this jurisdiction, officers
who administer the HGN test receive standardized training in its administration. When
administering the HGN test, those officers must follow standardized procedures as
outlined in the DWI Detection manual published by NHTSA. . . . Therefore, we
determine the technique employed in the HGN test to be a reliable indicator of
intoxication.

Emerson, 880 S.W.2d at 768 (emphasis in original). But the Court also narrowed the scope of
a law enforcement officer’s testimony on the HGN test:
For testimony concerning a defendant’s performance on the HGN test to be
admissible, it must be shown that the witness testifying is qualified as an expert on the
HGN test, specifically concerning its administration and technique. In the case of a
police officer or other law enforcement official, this requirement will be satisfied by
proof that the officer has received practitioner certification by the State of Texas to
administer the HGN. A witness qualified as an expert on the administration and
technique of the HGN test may testify concerning a defendant’s performance on the HGN
test, but may not correlate the defendant’s performance on the HGN test to a precise
[blood-alcohol content].

Id. at 769.
Application of Emerson’s Holdings
      As noted earlier, the party proffering the expert witness bears the burden of showing that the
witness is qualified on the specific matter in question. Wyatt, 23 S.W.3d at 27. On direct
examination, Cabano testified that he was certified by the State of Texas to administer the HGN
test. Thus, according to Emerson, Cabano is “qualified as an expert on the administration and
technique of the HGN test [and] may testify concerning a defendant’s performance on the HGN
test, but may not correlate the defendant’s performance on the HGN test to a precise [blood-alcohol content].” Emerson, 880 S.W.2d at 769.
      Cabano testified that, based in part on Gullatt’s performance on the HGN test, it was his
opinion that Gullatt was “under the influence of alcoholic beverage.” Other reasons Cabano gave
for his conclusion were: the smell of alcohol on Gullatt’s breath; his demeanor; his failed
performances on the one-leg-stand and walk-and-turn tests; and the manner in which he drove the
truck. Cabano testified that Gullatt’s performance on the HGN indicated that Gullatt was
intoxicated, and that testimony is expressly permitted by Emerson. Id. at 768-69. Cabano made
no reference to an estimate of Gullatt’s blood-alcohol content (BAC) based on his performance on
the HGN, nor did he attempt to correlate Gullatt’s performance to a precise BAC. But see Smith
v. State, No. 10-00-193-CR, slip op. at 17-18, 2001 WL 1560936, at *10 (Tex. App.—Waco Dec.
5, 2001, no pet. h.) (where we found error because the officer’s HGN testimony was an attempt
to correlate the defendant’s performance to a precise BAC). Thus, Cabano’s testimony was within
the parameters in Emerson. Emerson, 880 S.W.2d at 769. Accordingly, the trial court did not
err by allowing Cabano to testify about Gullatt’s performance on the HGN. Therefore, we
overrule his sole point of error.
CONCLUSION
      Having overruled Gullatt’s only point of error, we affirm the judgment.
 
                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed April 3, 2002
Publish
[CR25]